NOT DESIGNATED FOR PUBLICATION

Nos. 120,608
120,609
120,610

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of W.J., B.J., and A.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Barber District Court; RICHARD N. RALEIGH, judge. Opinion filed May 31, 2019.
Affirmed.

*Brian L. Moore*, of Hanson, Jorns & Beverlin, LLC, of Pratt, for appellant natural father.

*Gaten T. Wood*, county attorney, for appellee.

*Hannah L. Brass*, of Brass & Christensen, LLP, of Medicine Lodge, guardian ad litem.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Father appeals the termination of his parental rights to his three children, W.J., B.J., and A.J. He argues that the termination of his rights is not supported by clear and convincing evidence and that termination is not in the best interests of the children. Finding no error, we affirm.

*Factual and Procedural Background*

Father is the natural father of W.J., born in 2010, B.J., born in in 2008, and A.J., born in 2007. Mother has not been in the children's lives, leaving Father as the primary

sole custodian and caregiver for the children for the last six years. In October 2016, the State filed petitions alleging that the children were children in need of care (CINC), and the children were placed in the Department for Children and Families' (DCF) custody. The children were adjudicated as CINC in November. In August 2017, the court changed the permanency goals to adoption, and the State filed motions to terminate parental rights.

The district court held a termination hearing in April 2018. Father, Father's mother, and Emily Sickele, case manager for St. Francis Community Services, testified. Sickele, who became the case manager for the family in June 2017, testified that DCF was involved with the family before this case began in the fall of 2016. The family received preservation services in 2009-2010, 2013-2014, and 2015-2016. DCF became involved again in September 2016 when law enforcement and DCF suspected Father was using methamphetamine. When DCF interviewed Father as part of its investigation, Father admitted to using methamphetamine in the home with the children present. DCF then conducted drug testing and Father and W.J., the youngest of the children, tested positive for methamphetamine. The children were removed from the home and placed in DCF custody in October 2016.

Sickele testified that since the beginning of DCF involvement with this case, Father's biggest barrier to reintegration is his alcohol and drug use. Father's drug and alcohol assessment concluded that Father had a severe alcohol use disorder. He regularly tested positive for illegal narcotics—usually methamphetamine—during the pendency of the case. He failed to maintain any appreciable period of sobriety while this case was ongoing. Although Father's last agency-administered drug test, in March 2018, was negative for all substances, his latest arrest for a narcotics violation occurred 10 days before the termination hearing. He attended inpatient treatment but failed to participate in outpatient treatment. Sickele testified that she saw no benefit from treatment for Father, who continued testing positive for narcotics.

Sickele testified that Father's substance abuse is dangerous for the children. W.J. tested positive for methamphetamine when DCF did hair follicle testing on the children at the beginning of the case, and Father could not explain how or why that happened. Sickele testified that methamphetamine use by a parent is dangerous for children because a person's behavior while on methamphetamine can be unpredictable. Further, Father seems unconcerned about his substance abuse—Father told Sickele he does not need drug and alcohol assessments, and he did not continue with the recommended treatments after being released from inpatient treatment. Father testified that he feels that his substance use is under control.

Aside from Father's substance abuse, the record shows that Father worked on few of the case plan tasks. He attended each case plan meeting, completed a drug and alcohol assessment, participated in an online parenting class, attended inpatient treatment, completed a mental health assessment, and maintained the same residence throughout the case. But Sickele concluded that Father made insufficient changes in his circumstances due to his lack of effort.

Because Father failed to make much progress on his case plan tasks, he never progressed past one-hour weekly supervised visits. And although Father sometimes participated in visitation, he did so inconsistently. Sometimes, Father failed to show up to his scheduled visits, causing the children to have meltdowns and tantrums.

Father has had legal trouble throughout the case as well. He missed at least one visit with his children because he was in jail, and at the time of the hearing Father was on probation for a property crime. Father's latest arrest for a narcotics violation occurred 10 days before the termination hearing.

Father's actions and the consequences resulting from them have negatively affected the children—Sickele testified that their behavior had been regressing. Behaviors

3

such as lying and temper tantrums have become more common, A.J.'s grades have suffered, W.J. acts out at school, and W.J. tells school authorities that he is not being given his medication, although he is. B.J. is autistic and therefore has more behavioral difficulties than the other children, and he has been verbally and physically aggressive. When asked if she could explain these behaviors, Sickele attributed the behavior to the uncertainty with their cases and their lack of permanency.

Following the testimony, the district court terminated Father's parental rights. The court noted that the children had been out of the home for over a year and found Father unfit by reason or condition rendering him unable to care for the children and that his conduct or condition is unlikely to change in the foreseeable future. In doing so, the court found Father's substance abuse dangerous for the children and a barrier to reintegration:

> "I am extremely concerned about [Father's] use of narcotics and dangerous drugs. He's failed ten tests during the course of the time these children have been out of the home. That would be horribly disconcerting had the beginning of this case not been because his youngest child tested positive for narcotics.
>
> "And I just have to say, the fact that what he tested positive for being methamphetamine, to be, that is—that is terrifying. . . . I am concerned that it was not terrifying enough to get into treatment, stay in treatment, maintain sobriety, do anything and everything that he was asked to have those children reintegrated with him. His use has been of such duration and nature I believe as to render him unfit and unable to care for these children."

The trial court then found that it was in the best interests of the children to terminate Father's parental rights. Father appeals.

*Legal Analysis*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c). The State may also rely on one or more of the 13 statutory presumptions of unfitness outlined in K.S.A. 2018 Supp. 38-2271. Here, the State relied on K.S.A. 2018 Supp. 38-2269(b)(3) and (b)(7).

In reviewing a district court's determination of unfitness, we must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. We cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against Father.

5

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*Clear and convincing evidence supports the district court's termination of Father's parental rights.*

The district court based its termination of Father's parental rights on two factors:

- K.S.A. 2018 Supp. 38-2269(b)(3): the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;

- K.S.A. 2018 Supp. 38-2269(b)(7): failure of reasonable efforts made by appropriate public agencies to rehabilitate the family.

We find that each factor is supported by clear and convincing evidence.

6

We first address Father's substance abuse. The district court found that Father's substance abuse is of such duration or nature as to render him unable to care for his children's ongoing physical, mental, or emotional needs. Father's drug use has been prevalent throughout the case—he consistently tested positive for methamphetamine or other controlled substances. Father admitted to using methamphetamine in front of the children and his youngest child's hair follicle test came back positive for methamphetamine in the fall of 2016. Father was unconcerned about his substance abuse, and chose to believe that his drug use was under control and posed no problems to his reintegration with his children. Yet he did not follow through with his outpatient treatment, he repeatedly failed drug tests during the case, and he was arrested for a narcotics violation just 10 days before the termination hearing. The district court credited the testimony about the negative effects of Father's drug use on the children.

The evidence also shows that reasonable efforts by appropriate agencies to rehabilitate the family failed. Despite 18 months of agency involvement, Father failed to change his circumstances enough to progress beyond weekly supervised visits, much less enough to contemplate reintegration with his children. Although Father completed an online parenting class, a mental health assessment, and a substance abuse assessment, he failed to address his biggest barriers to reintegration, through no fault of DCF or St. Francis.

Therefore, based on the record before us viewed in a light favoring the State, we are convinced that a rational fact-finder could determine to a high degree of probability that Father is unfit to parent his children for the reasons cited by the district court.

*Foreseeable future*

We also find support for the district court's determination that Father's unfitness is unlikely to change in the foreseeable future. In gauging the foreseeable future, the courts

7

should use "child time" as the measure. As the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq. recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

The children have been out of Father's custody since late 2016 and yet Father has been unable to shake his substance abuse problems and change his circumstances for the benefit of his family. Father argues that his drug use is under control and that no direct testimony showed that his drug use negatively impacted his children. But no direct evidence of that fact, or any fact, is necessary. Any material fact may be proven not only by direct testimony, but also by indirect or circumstantial evidence, or by a combination of both. See *State v. Tillery*, 227 Kan. 342, 346, 606 P.2d 1031 (1980); *In re J.L.*, No. 117,529, 2018 WL 1247167, at *3 (Kan. App.) (unpublished opinion) (finding State not required to provide direct evidence Mother's conduct was due to her drug use if sufficient evidence shows her drug use impeded reintegration), *rev. denied* 308 Kan. 1594 (2018). No exclusive mode of proof of the factors supporting termination is prescribed by law. In *In re C.A.G.-V.*, No. 113,334, 2015 WL 5224828 (Kan. App. 2015) (unpublished opinion), we found: "While there may not be direct evidence that Father's drug use was in and of itself harmful to C.A.G.-V., there is clear and convincing evidence that Father's failure to acknowledge his drug issues created a significant impediment towards reintegration." 2015 WL 5224828, at *4. The same is true here. The district court could reasonably infer from the evidence that Father's drug use negatively impacted the children:  his drug use throughout the case was pervasive, it prevented him from achieving his case plan tasks, and it put his children in danger. No evidence suggests that

8

Father was changing his behavior in a way that would allow him to properly care for his children in the foreseeable future.

*Termination of Father's parental rights is in the children's best interests.*

We next decide whether the district court abused its discretion in finding that termination of Father's parental rights was in the children's best interests. These children have been out of the home since October 2016, and the lack of permanency has affected them. The children's behavior has regressed and Father's missed visits cause meltdowns and tantrums. A.J., the oldest child, wants to know when she will be adopted. Public agencies have provided services to the family on and off for nine years, but Father has failed to change his circumstances for his children. These children deserve permanency but Father is not close to attaining reintegration. Remaining with Father is unsafe for the children. His substance abuse is dangerous and the youngest of the children tested positive for methamphetamine. A reasonable person could agree with the district court's finding that it is in the children's best interests, due to their physical, mental, and emotional health needs, to terminate Father's parental rights. We find no abuse of discretion.

Affirmed.